IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MARCUS D. THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) NO. 1:18-cv-00048 |
| JAMIE GARNER, et al., | ) JUDGE CAMPBELL |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Marcus D. Thomas, an inmate currently confined at the Knox County Detention Center in Knoxville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 against Nurse Cox, Dr. Soto, Nurse Kelly, Dr. McKnight, and Jamie Garner. (Doc. No. 1.) Plaintiff also filed an application to proceed in this Court without prepaying costs and fees (Doc. No. 2), and a proposed order (Doc. No. 4) the Court construes as a motion for a preliminary injunction and temporary restraining order.

**I.  Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's in forma pauperis application (Doc. No. 2) and related materials (Doc. No. 3) that he lacks sufficient financial resources from which to pay the full filing fee in advance, Plaintiff's application (Doc. No. 2) will be granted. Plaintiff nonetheless remains responsible for paying the $350.00 filing fee, so the fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. Motion for a Preliminary Injunction and Temporary Restraining Order

Plaintiff requests a preliminary and permanent injunction in the complaint (Doc. No. 1 at 9), and filed a separate proposed "Order to Show Cause for An Preliminary Injunction and Temporary Restraining Order" (Doc. No. 4). The Court construes this proposed order as a motion for a preliminary injunction and temporary restraining order. When he filed this motion, Plaintiff was confined at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. (Doc. No. 1 at 1.) Since then, Plaintiff has been transferred to the Knox County Detention Center in Knoxville, Tennessee. (Doc. No. 8.) "A prisoner's request for injunctive relief is moot upon his transfer to a different facility." *Newell v. Ford*, No. 16-6449, 2016 WL 9737926, at *1 (6th Cir. Oct. 31, 2016) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Accordingly, Plaintiff's motion (Doc. No. 4) will be denied as moot.

## III. Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff alleges that he has suffered from severe pain due to swollen testicles for the past four years, and that he received inadequate medical care while incarcerated at two Tennessee

2

prisons. (Doc. No. 1 at 3–5.) According to Plaintiff, he noticed significant swelling at his previous place of confinement, the "West High State Penitentiary." (*Id.* at 3.) The Court infers that Plaintiff is referring to the West Tennessee State Penitentiary ("WTSP"). Plaintiff alleges that he requested medical care through the WTSP grievance procedure in 2015, but WTSP staff did not provide any treatment. (*Id.* at 6.) Specifically, Plaintiff alleges that WTSP Nurse Cox told him he would be referred to a doctor, but he did not see a doctor. (*Id.* at 3.) After some number of "[y]ears passed" at WTSP, Plaintiff was transferred to SCCF. (*Id.*)

At SCCF, Dr. Soto referred Plaintiff to Dr. McKnight, a urologist at Jackson Memorial Hospital in Jackson, Tennessee. (*Id.*) Dr. McKnight stated "it was nothing more than fluid that needed to be drained," and sent Plaintiff back to SCCF because prison staff could drain the fluid. (*Id.*) SCCF clinical staff refused to drain the fluid because "it was Dr. McKnight's job" and "they knew it was a mass not fluid." (*Id.*) Plaintiff returned to his cell without any medical care. (*Id.*) At some point, Plaintiff alleges, SCCF clinical staff performed an ultrasound and determined "there is a mass," but they have not performed tests to determine if the mass is benign. (*Id.* at 4.)

Plaintiff experienced "severe pain" accompanying this condition while at SCCF, causing him to "break out in cold sweats and pass out" multiple times. (*Id.* at 3–4.) In these circumstances, SCCF clinical staff would take Plaintiff's blood pressure and tell him he would be referred to a doctor, but he alleges that the last doctor he saw was Dr. McKnight. (*Id.* at 4.) Plaintiff also alleges that he experiences "severe pain" and complications during bowel movements, and that he produces foul-smelling urine. (*Id.* at 4–5.) According to Plaintiff, the Defendants wrote in his medical chart that he shows signs of a hernia. (*Id.* at 5.) He alleges that he has to "wrap[] his lower abdomen and testicles to prevent the hernia from popping through the muscular wall." (*Id.*) Plaintiff alleges that he has requested medical treatment at SCCF from February 2016 through

3

June 2018, but that he has been refused treatment because the Defendants' "fear of Plaintiff's reaction in finding out that he has a life threating illness." (*Id.* at 6–7.) This allegation of the Defendants' motivation for failing to provide treatment is based the alleged statement of an SCCF "psych doctor" to Plaintiff in June 2018 that SCCF staff "was in fear of informing him that he had a life threatening illness because they thought he may overreact." (*Id.* at 7.)

Plaintiff requests injunctive relief in the form of medical treatment and transfer to a medical facility, declaratory relief, and monetary damages. (*Id.* at 5–6, 8–9.)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting

4

under the color of state law.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015)).

### 1. Dismissal of Nurse Cox, Dr. McKnight, and Jamie Garner

As an initial matter, Plaintiff's allegations against Nurse Cox are barred by the applicable statute of limitations. Tennessee has a one-year statute of limitations for Section 1983 claims. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing Tenn. Code Ann. § 28-3-104(a)). "[T]he accrual date of a § 1983 cause of action is a question of federal law . . . ." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the "standard rule" is that "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 772–73 (6th Cir. 2013) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)). A prisoner's civil complaint is deemed filed when it is submitted to prison officials for mailing. *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002). The Court infers that Plaintiff submitted the complaint for mailing on the same day that he signed it, and therefore considers the date of filing to be June 27, 2018. (Doc. No. 1 at 9.) Thus, the Court considers Plaintiff's claims to be untimely if they are based on acts that he knew or had reason to know occurred prior to June 27, 2017.

Here, Plaintiff alleges that he has suffered from an ongoing medical need since he was incarcerated at the West Tennessee State Penitentiary. In an unpublished opinion considering the application of Tennessee's statute of limitations to Section 1983 claims arising from a years-long medical need, the Sixth Circuit held that only "[a]ctual actions by [defendants] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations." *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466–67 (6th Cir. 2010). Plaintiff alleged that he used the WTSP grievance procedure to try to obtain medical treatment in 2015, but

5

he "received no response by way of being provided medical help." (Doc. No. 1 at 6.) He alleges WTSP Nurse Cox told him he would be referred to a doctor, but he did not see a doctor. Thus, based on Plaintiff's own allegations, he was aware that Nurse Cox deprived him necessary medical treatment in 2015. No later than February 2016, Plaintiff alleges, he was transferred to the South Central Correctional Facility. Although Plaintiff does not specify when WTSP Nurse Cox allegedly failed to provide him medical treatment, it is clear that she did so well before June 27, 2017. Accordingly, Plaintiff's claims against Nurse Cox are untimely, and she will be dismissed as a party. *See Dearing v. Mahalma*, No. 1:11-cv-204, 2011 WL 3739029, at *4–6 and n.4 (S.D. Ohio Aug. 24, 2011) (citing *Bruce*, 389 F. App'x at 463–67 and *Cuco v. Fed. Med. Ctr., Lexington*, 257 F. App'x 897, 899–90 (6th Cir. 2007)) (explaining the "Sixth Circuit's reluctance to apply the continuing-violation doctrine to claims of deliberate indifference to serious medical needs").

As to Dr. McKnight, Plaintiff's allegations reflect that he was not a "state actor" for the purpose of Section 1983. Whether the Court considers a doctor to be a "state actor" under Section 1983 depends on "the relationship among the State, the physician and the prisoner." *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 55–56 (1988)). "[T]he primary factor is 'the physician's function within the state system, not the precise terms of his employment.'" *Id.* (quoting *West*, 487 U.S. at 56). Here, Plaintiff alleges that Dr. McKnight misdiagnosed him and provided inadequate medical treatment at the hospital on one occasion. Even construing the complaint liberally, however, Plaintiff does not suggest that Dr. McKnight had any particular relationship with the State beyond the fact that he happened to be a urologist at a hospital in the vicinity of the prison where Plaintiff was incarcerated. Because Plaintiff fails to allege that Dr. McKnight had any particular function in the state system, he was not acting under color of state law and Plaintiff fails to state a claim against him. *See Raper v. Cotroneo*, No. 1:17-

cv-368, 2017 WL 4173507, at *3 (W.D. Mich. Sept. 21, 2017) (finding that a prisoner failed to state a claim against a doctor on initial review under the PLRA where the claims "strictly involve[d] medical treatment provided by an off-premises, private doctor").

Plaintiff also names Jamie Garner as a defendant in this action, and identifies Garner as the Health Administrator of CoreCivic in the list of parties to the complaint. (Doc. No. 1 at 2.) The Court takes judicial notice that CoreCivic is the private entity contracted to manage SCCF,[1] the facility where Plaintiff has been incarcerated since at least February 2016. To the extent that Plaintiff seeks to hold Garner liable under Section 1983 as a manager or supervisor of medical treatment at SCCF, he fails to state a claim. It is well-settled that "Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A claim against a supervisory official "must fail . . . unless 'the supervisor encouraged [a] specific incident of misconduct or in some other way directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). Here, Plaintiff does not make any allegations against Garner in the body of the complaint, much less allege that Garner personally participated in any unconstitutional conduct. Garner will therefore be dismissed.

### 2. Denial of Adequate Medical Care at SCCF

Plaintiff alleges that he has received inadequate medical treatment since his arrival at SCCF. The Eighth Amendment establishes the right for prisoners to receive adequate medical

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The Tennessee Department of Correction website reflects that CoreCivic is a private entity that manages SCCF. South Central Correctional Facility, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility (last visited Sept. 11, 2018).

care. *Shadrick*, 805 F.3d at 737–38. Thus, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Darrah v. Krishner*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle*, 429 U.S. at 105). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, Plaintiff alleges that he has experienced swollen testicles accompanied by severe pain and other complications for approximately the last four years. The Court concludes that these allegations satisfy the objective component of a deliberate indifference claim at this juncture. Further, Plaintiff's allegations reflect that SCCF Dr. Soto was aware of Plaintiff's medical needs and deliberately disregarded them. First, Plaintiff's allegation that Dr. Soto referred him to a urologist at Jackson Memorial Hospital reflects that Dr. Soto knew about Plaintiff's medical needs. And second, Plaintiff alleges that he received essentially no treatment from the urologist, or upon his return from the hospital. "[N]eglecting a prisoner's known medical needs may constitute deliberate indifference." *Darrah*, 865 F.3d at 368 (citing *Comstock*, 273 F.3d at 702). Accordingly, the Court concludes that Plaintiff has stated an Eighth Amendment claim against Dr. Soto for deliberate indifference to his serious medical needs.

As to SCCF Nurse Kelly, Plaintiff names her as a defendant in the list of parties but does not make any specific allegations against her in the body of the complaint. The Court "is not

8

required to accept non-specific factual allegations and inferences or unwarranted legal conclusions," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a pro se prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Plaintiff's general allegations that he continually requested care from SCCF medical staff is insufficient to satisfy the subjective component of a deliberate-indifference claim against Nurse Kelly. *See Winkler*, 893 F.3d at 891 (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)) ("[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually."). To state a claim for deliberate indifference, Plaintiff must allege that each "specific [defendant] was aware of facts from which he or she could infer a substantial risk of serious harm." *Id.* Because Plaintiff does not identify how Nurse Kelly was involved in the alleged inadequate medical treatment, Plaintiff's deliberate indifference claim against Nurse Kelly is subject to dismissal based on the allegations currently before the Court.

### IV. Conclusion

For these reasons, Plaintiff's Eighth Amendment claim against Dr. Soto for deliberate indifference to his serious medical needs will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. In its current form, Plaintiff fails to state deliberate-indifference claim against Nurse Kelly. As set forth in the accompanying Order, however, the Court will grant Plaintiff leave to amend the complaint regarding his deliberate-indifference claim against Nurse Kelly if he so chooses. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his

complaint even when the complaint is subject to dismissal under the PLRA."). All other claims and defendants will be dismissed. Plaintiff will not be permitted to amend his complaint regarding any other claim or defendant because, for the reasons stated above, amendment would be futile. *See Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) (citing *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)) ("Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, *LaFountain*, 716 F.3d at 951, and leave to amend should be denied if the amendment would be futile.").

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE